ORDERED.

**Dated:  May 04, 2016**

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | |
| Thomas Allen Chesley, | Case No. 8:11-bk-13785-KRM |
| | Chapter 7 |
|       Debtor, | |
| _____/ | |
| Susan K. Woodard, | |
|       Plaintiff, | |
| v. | Adv. No. 8:15-ap-00474-KRM |
| Harry Hammons, Bullfrog Performance Speed Shop, Inc., Timothy R. Nobles, Tim Nobles Trailer Sales and Rentals, Inc., Tim Nobles Trailers Inc., Tim Nobles Trailer and Repair LLC, and Thomas Allen Chesley, | |
|       Defendants. | |
| _____/ | |

**MEMORANDUM OPINION REGARDING
PROPERTY OF THE BANKRUPTCY ESTATE
(WARLOCK RACING BOAT)**

In 2000, Mr. Chesley ("Debtor") purchased a world class 29' Warlock open sea racing

boat, serial # UTCWC706G001 (the "Warlock"), with a tow trailer, engine and related

accessories.  The Warlock is a specialized vessel, which Debtor has used for more than a decade

to compete in open sea races.  No certificate of title was ever issued for the Warlock.  Within months before the bankruptcy filing, Debtor paid $3,500 to acquire another tow trailer, and $9,999 for an outboard motor.  In this bankruptcy case, Debtor never disclosed his possession of the Warlock or his purchase of the Warlock-related assets on the eve of bankruptcy.[1]

Debtor does not dispute his purchase, use and possession of the Warlock.  Instead, he claims that it cannot be property of the bankruptcy estate because no certificate of title was issued to him.  Debtor argues, inconsistently, that his father, who does not hold such registered title either, is the real owner of the Warlock, according to their mutual understanding.  Debtor argues that the Warlock, tow trailer and outboard motor in his possession are beyond the reach of this Court's jurisdiction.[2]

The Chapter 7 trustee, Susan K. Woodard (the "Trustee"), filed this adversary proceeding against Debtor and his father, Harry Hammons ("Hammons"), and against others who may claim an interest in these assets:  Bullfrog Performance Speed Shop, Inc. ("Bullfrog"); Timothy R. Nobles, Tim Nobles Trailer Sales and Rentals, Inc., Tim Nobles Trailers Inc., and Tim Nobles Trailer and Repair LLC (collectively, the "Nobles Defendants").[3]  The Trustee seeks a declaratory judgment that the Warlock, a 29-31' Tow Master Boat Trailer, serial #5AZBB3034YF007215, outboard motor, and related equipment (including propellers and electronics) are property of Debtor's bankruptcy estate, pursuant to Bankruptcy Code § 541.[4]

---

[1] Debtor appears in this adversary proceeding *pro se.*  He was previously represented in this case by four different bankruptcy attorneys, all of whom requested permission, and were allowed, to withdraw.  Main Case 8:11-bk-13785-KRM ("Main Case"), Doc. Nos. 96, 351, 438, and 632.

[2] Doc. No. 123 at ¶¶ 27-28; Doc. No. 146 at ¶¶ 51-54.

[3] Doc. No. 1.

[4] 11 U.S.C. § 541(a).  Unless otherwise stated, statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

She also seeks judgment that no defendant, other than Debtor, has any interest in these assets and, upon such determinations, the assets must be turned over to the Trustee, pursuant to § 542.[5]

Debtor and the Trustee have filed cross motions for summary judgment.[6]  Judgments have been entered previously against all defendants except Debtor.[7]  The only question remaining is whether Debtor had an equitable interest in the Warlock, outboard motor, tow trailer and the related assets on the petition date and the date the original case was converted to Chapter 7.[8]

After reviewing the record,[9] the Court rejects Debtor's principal contention that he is not the "legal" owner of the Warlock.  The statute he relies on, Fla. Stat. § 319.22(1), applies only to

---

[5]  11 U.S.C. § 542(a).  Doc. No. 1.

[6]  Doc. Nos. 109 and 121 (amended and superseded by Doc. No. 123).  The Trustee has requested the Debtor's motion for summary judgment be stricken to the extent that Debtor, a non-lawyer, argues and seeks relief for the other individual and corporate defendants Doc. No. 124.  Debtor has filed a response to the Trustee's motion to strike arguing that he is not attempting to represent the Nobles Defendants, and that he has no intention of seeking reconsideration of the summary judgment entered against Hammons.  Doc. No. 125.

[7]  On June 22, 2015, the Trustee filed motions for default against the Nobles Defendants on the grounds that the Answer was non-responsive to the factual allegations of the Complaint and, as to the entity defendants, did not bear the signature of an attorney authorized to practice before this Court (Doc. Nos. 23, 24, 25, 26).  After a hearing on July 28, 2015, the Court issued an order continuing the hearing (Doc. No. 63) to allow the defendants to retain an attorney.  Because corporations and LLC entities are only permitted to be heard through counsel, the Court gave notice to Bullfrog and the Nobles Defendants that they would be defaulted if they did not appear through counsel at the continued hearing on August 25, 2015.  Neither Bullfrog, nor the Nobles Defendants appeared at the continued hearing.  On September 3, 2015, clerk's defaults were entered against Bullfrog and all of the Nobles Defendants (Doc. Nos. 81, 84, 85, 86 and 87), none of whom had filed an answer or complied with the order requiring the entity defendants to appear through counsel (Doc. No. 63).  Amended Final Default Judgments were entered against the Nobles Defendants on March 2, 2016 (Doc. Nos. 156, 157, 158, and 160).  On October 6, 2015, this Court granted summary judgment in favor of the Trustee against Hammons and Bullfrog (Doc. Nos. 107 and 108).

[8]  After more than two years, Debtor was unable to confirm a Chapter 13 plan.  The case was converted to Chapter 7 on November 21, 2013.  Main Case, Doc. No. 482.  After the conversion to Chapter 7, the bankruptcy case, originally assigned to Judge Catherine Peek McEwen, was reassigned to the above-signed judge.

[9] The record includes the following:

- Negotiable Promissory Note, Doc. No. 1-1 at 1.
- Florida UCC Financing Statement, Doc. No. 1-1 at 3.
- Unofficial speed boat race results (July 3, 2011), Doc. No. 1-2 at 1.
- Official speed boat race entry list, Doc. No. 1-2 at 5.
- Official speed boat race results (July 6, 2014), Doc. No. 1-2 at 12.

the title registration of motor vehicles and mobile homes.  Therefore, Debtor's motion for

summary judgment will be denied.  The undisputed and admitted facts demonstrate that Debtor,

and no one else, is the beneficial owner of the Warlock.  The Court rejects Debtor's claim that

the tow trailer under the Warlock is not the same one Debtor purchased pre-petition; but, for

pleading deficiencies, complete relief as to ownership of the trailer cannot be granted to the

Trustee.  The Trustee's motion for summary judgment will be granted in full, however, as to the

Warlock, the propeller and electronics, and the outboard motor.  Partial summary judgment will

be entered as to the tow trailer now with the Warlock.

## BACKGROUND FACTS

Debtor is a world class open sea boat racer.  He competes in races sanctioned by Super

Boat International.[10]  In 2004, he won the World Championship.[11]  He competed in the World

Championship in 2012.[12]

The Trustee has alleged, and Debtor does not dispute, that Debtor purchased the Warlock

in July 2000, with a loan from First Union National Bank in the amount of $80,310 (the

"Warlock Loan").[13]  The collateral for the Warlock Loan was stated in the promissory note to be:

---

- Transcript of deposition testimony of Harry Hammons, taken on August 24, 2015 in AP 490, Doc. No. 98-1; Doc. No. 109-1.
- Transcript of deposition testimony of Thomas Chesley, taken on August 24, 2015 in AP 490, Doc. No. 109-2.
- Transcript of May 14, 2015 hearing in the main case, Doc. No. 109-3.
- Affidavit of Peter Morell, Doc. No. 109-5.
- Affidavit of Susan K. Woodard, Chapter 7 Trustee, Doc. No. 119-1.
- Transcript excerpt of deposition testimony of Timothy Nobles taken on July 17, 2015 in AP 490, Doc. No. 123-1 at 10.

[10]  Doc. No. 1 at ¶ 11.

[11]  Chesley Dep. 358:10 - 13; Adv. Pro. No. 8:14-AP-490-KRM ("AP 490"), Doc. No. 148, Trial Tr. vol. 092115, 215: 8 - 15, Sept. 21, 2015.

[12]  Chesley Dep. 336:3 - 13.

> *"00 Warlock 29 World Class Race Boat SER # UTCWC706G001 and*
> *29-31 Tow Master Boat Trailer Serial # 5AZBB3034YF007215 and*
> *any attachments hereto and in the future added to the boat."*[14]

Debtor made loan payments of about $900 per month for seven years.[15] But, he ceased doing so after he was severely injured in a 2005 automobile accident.[16] First Union's successor brought suit, but declined to seek replevin of the Warlock and other assets, apparently because its liens were not perfected.[17] The bank obtained a judgment of about $70,722 against Debtor and his former wife on January 19, 2007.[18]

Debtor filed his Chapter 13 petition on July 21, 2011 (the "Petition Date"). Just two months before filing, Debtor received $336,644 from settling his personal injury claim arising from the 2005 accident.[19] He used a portion of these funds to buy assets related to his racing activities: on June 2, 2011, Debtor paid $3,500 to "Tim Nobles Trailers" to acquire a tow trailer;[20] on or about July 5, 2011, Debtor purchased an outboard motor for $9,999.[21] Debtor admits that he raced the Warlock in Sarasota on July 3, 2011, less than three weeks before the petition date.[22]

---

[13] Negotiable Promissory Note, Doc. No. 1-1.

[14] *Id.*

[15] Doc. No. 109 at 9; Chesley Dep. 36:23 - 25.

[16] Chesley Dep. 34:13 - 20.

[17] Chesley Dep. 33:4 - 34:14.

[18] Chesley Dep. 75:15 - 77:10; AP 490, Doc. No. 143-82 (Pl.'s Ex. 180).

[19] AP 490, Doc. No. 1 at ¶ 5.

[20] Doc. No. 109 at 11; Chesley Dep. 208:2 - 209: 4; AP 490, Doc. No. 143-87 at 202 (Pl.'s Ex. 185).

[21] AP 490, Doc. No. 143-106 at 4 (Pl.'s Ex. 203, par II. l.)

[22] Chesley Dep. 355:15- 21. *See also*, Doc. No. 1-2 at 4.

The Warlock and outboard motor were not disclosed in any of the schedules filed in Debtor's bankruptcy case.[23]  In his several responses to Item 26 of Schedule B, which asks for disclosure of "boats, motors and accessories," Debtor disclosed either "misc. parts" or nothing at all.[24]  In the two Statements of Financial Affairs filed in 2011, Debtor disclosed only that he was holding in his possession an asset described as "father's boat."[25]  It was not until January 9, 2013, that Debtor listed in Schedule B, Item 28, a "TNT trailer" located at his house.[26]  But, in the subsequent amendment of Schedule B, filed on April 14, 2014, that disclosure was deleted.[27]

With such little to go on, the Trustee described these assets in her Complaint as they were described in the 2000 Warlock Loan note.  The Trustee alleges that she learned, at a hearing on May 14, 2015, of Debtor's claims that the Warlock is owned by Hammons, the outboard motor is owned by Bullfrog, and the tow trailer is owned by Tim Nobles, either individually or through one of his businesses.[28]  The Trustee also alleges that at the hearing on May 14, 2015, Debtor disclosed that a certificate of title had never been issued for the Warlock and that Debtor believes

---

[23]  Debtor amended his Schedules and Statement of Financial Affairs multiple times including:  (a) nine sets of schedules (Main Case, Doc. Nos. 14, 67, 131, 279, 306, 510, 597, 613, and 620) and (b) seven Statements of Financial Affairs (Main Case, Doc. Nos. 14, 67, 138, 307, 596, 613, and 619).  Some of these fillings (Main Case, Doc. Nos. 510, 596, 597, and 613) were stricken because the filing fee was not paid, the amendment did not contain an appropriate proof of service, and/or the amendment did not comply with the necessary local rules.

[24]  Main Case,  Doc. No. 14 at 6 ("misc. parts"); Main Case, Doc. No. 67 at 6 ("misc. parts"); Main Case, Doc. No. 131 at 7 (nothing disclosed); Main Case, Doc. No. 279 at 6 (nothing disclosed); Main Case, Doc. No. 306 at 7 ("misc. parts"); Main Case, Doc. No. 620 at 5 (nothing disclosed).

[25]  Statement of Financial Affairs, filed August 11, 2011 (Main Case, Doc. No. 14, p. 28 ¶ 14); Statement of Financial Affairs, filed December 7, 2011 (Main Case, Doc. No. 67, p. 13 at ¶ 14).

[26]  Main Case, Doc. No. 306, Item 25 of Schedule B.

[27]  Main Case, Doc. No. 620, Item 25 of Schedule B.

[28]  Doc. No. 1 at ¶ 22.

he does not possess the Manufacturer's Statement of Origin ("MSO") for it; according to Debtor, Hammons may have the MSO.[29]

The MSO for the Warlock has not been proffered in this proceeding, by Debtor or Hammons, in support of Hammons' claim of ownership.  The parties apparently agree that no title has ever been issued for the Warlock and that the company that manufactured it is no longer in business.

DISCUSSION

1.    <u>Jurisdiction.</u>

The bankruptcy court has exclusive jurisdiction over all property of the estate wherever located, pursuant to 28 U.S.C. § 1334.  Where, as here, the bankruptcy estate has a colorable claim that Debtor had a beneficial interest in assets on the petition date, the bankruptcy court has jurisdiction to adjudicate all competing claims and compel anyone who has possession of the assets to turn them over the trustee.[30]

Determining whether any particular asset is included in the bankruptcy estate, based on Debtor's legal or equitable interest on the petition date, is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (E).  Therefore, the Court may enter a final order in this proceeding.  This memorandum opinion constitutes the Court's findings of fact and conclusions of law, in accordance with Fed. R. Bankr. P. 7052.

---

[29]  Doc. No. 1 at ¶ 23.

[30]  "The scope of section 541(a) of the Bankruptcy Code is intentionally broad. It not only includes property in which a debtor has an equity interest, it includes all property in which a debtor has *any* interest." *In re Marathe*, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011)(citing *In re Chambers*, 451 B.R. 621, 622 (Bankr.N.D.Ga.2011)(emphasis in original).  A bankruptcy court has jurisdiction over disputes regarding alleged property of the estate at the outset of the case.  *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987) (finding that if estate abandons interest in property, then bankruptcy court's jurisdiction to determine disputes concerning that property lapses).  "[A] bankruptcy court has jurisdiction over property owned by or in the actual or constructive possession of the debtor." *Matter of FedPak Systems, Inc.*, 80 F.3d 207, 213 (7th Cir. 1996) (citing *In re K & L*, 741 F.2d 1023, 1029 (7th Cir. 1984) (citation omitted).

2.     Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law."[31]  "The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  If the moving party meets this initial burden, then the other party must demonstrate the existence of a genuine issue of material fact."[32]

In addition to the authority to grant summary judgment, the Court may draw inferences, make findings of fact, and make determinations of witness credibility.[33]  Furthermore, "[i]t is permissible for a trial court in a non-jury case to grant summary judgment if witness credibility is not at issue and trial would not enhance the court's ability to draw inferences and conclusions."[34]

3.     Property of the Bankruptcy Estate.

If the Warlock and related assets are property of the bankruptcy estate, they must be turned over to the Trustee by any person having possession.[35]  Property of the estate is broadly

---

[31]  Fed. R. Civ. P. 56(a) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056.

[32]  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993).

[33]  *In re French*, 2012 WL 1166248, *4-5 (M.D. Fla. Apr. 9, 2012); *Nunez v. Superior Oil Co*., 572 F.2d 1119, 1124 (5th Cir. 1978).

[34]  *Id.* at *4.  As the Fifth Circuit explained in *Nunez v. Superior Oil Company* (which is precedent in the Eleventh Circuit under *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981):

> "If a decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though the decision may depend upon inferences to be drawn from what has been incontrovertibly proved.  Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in [drawing a conclusion] even if that conclusion is deemed 'factual' or involves a 'mixed question of fact and law.'  A trial on the merits would reveal no additional data . . . .  The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial."

572 F. 2d at 1124.

[35]  11 U.S.C. § 542(a).  *See, e.g., In re Allegheny Label, Inc.*, 128 B.R. 947, 954 (Bankr. W.D.Pa. 1991).

defined in § 541(a) as "all legal or equitable interests of the debtor in property as of the commencement of the case," which is the date when the bankruptcy petition is filed.[36]  The determination of what constitutes property of the estate is a question of federal law, even though the "the nature and existence of a debtor's right to property is determined by looking at state law."[37]

Conversion of a case from one chapter to another does not change the original petition date.[38]  When a case is converted from Chapter 13 to Chapter 7, property of the estate in the Chapter 7 case consists of property of the estate on the petition date that remains in the possession of or is under the control of Debtor on the date of the conversion.[39]

4.   Deposition Testimony.

In support of her motion for summary judgment,[40] the Trustee relies on deposition transcripts from another adversary proceeding, filed by the United States Trustee seeking to bar Debtor's discharge for alleged violations of § 727(a) of the Bankruptcy Code ("AP 490").[41] Here, the Trustee proffers the deposition testimony of Debtor and Hammons, taken in AP 490 on

---

[36]  11 U.S.C. § 541(a)(1).

[37]  *In re Kalter*, 292 F.3d 1350, 1353 (11th Cir. 2002) (citing *Lewis v. Charles R. Hall Motors, Inc. (In re Lewis)*, 137 F. 3d 1280, 1283 (11th Cir. 1998) (quoting *Southtrust Bank of Ala. v. Thomas (In re Thomas)*, 883 F.2d 995 (11th Cir. 1989)).  *See also, In re Sierra Steel, Inc.,* 96 B.R. 271, 273 (9th Cir.BAP1989) *(citing In re North Am. Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir.1985), *amended,* 774 F.2d 1390 (9th Cir.1985), *cert. denied sub nom. Daniel A. Torres, M.D., P.C. v. Eastlick,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986)).

[38]  11 U.S.C. § 348(a).

[39]  11 U.S.C. § 348(f).

[40]  Doc. No. 109.

[41]  AP 490, filed on June 4, 2014.

August 24, 2015.[42]  In support of summary judgment,[43] Debtor relies on an excerpt from the

deposition testimony of Tim Nobles, taken on July 17, 2015.[44]

   In this proceeding, the Trustee seeks to recover some of the very same assets that were

alleged in AP 490 to have been concealed by Debtor in violation of § 727(a)(2).  One of Debtor's

defenses in AP 490, as here, is that he did not "legally" own these assets.  Thus, there is an

overlap of issues in AP 490 and this proceeding.[45]  Debtor was present at each of these

depositions, as was Attorney Donica, for the Trustee.  The admission of a deposition from a prior

lawsuit is "vested in the . . . court's sound discretion."[46]  Because the depositions from AP 490

involve essentially the same parties and subject matter, the Court finds it appropriate to consider

them in this proceeding.[47]

   Under Federal Rule of Evidence 801(d)(2)(A) an opposing party's statement, made by the

party in an individual capacity, and offered against an opposing party, is not hearsay.  Therefore,

the deposition testimony of Debtor and Hammons is appropriately offered by the Trustee as

admissions by those parties in this proceeding.

5.     Debtor's Motion for Summary Judgment.

   Debtor's principal contention for summary judgment is that because a title certificate

---

[42]  Doc. No. 109-1 and 109-2.

[43]  Doc. No. 123.

[44]  Doc. No. 123-1 at 10.

[45]  *See In re Paramount Payphones, Inc.*, 256 B.R. 341, 346 (Bankr. M.D. Fla. 2000).

[46]  *Id.* at 343 (citing *Hub v. Sun Valley Co.*, 682 F.2d 776, 777 (9th Cir. 1982); *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 773 (10th Cir.1999) (citing *Reeg v. Shaughnessy,* 570 F.2d 309, 316 (10th Cir.1978)).

[47]  The Court also concludes that the elements of F.R.Civ.P. 32(a)(8) are satisfied.

for the Warlock was never issued to him, he cannot be deemed to be its owner.  Debtor further

contends that Fla. Stat. § 319.22(1) bars this Court from declaring otherwise:[48]

> "  (1) Except as provided in §§ 319.21 and 319.28, a person acquiring a motor vehicle or mobile home . . . from the owner thereof . . . shall not acquire marketable title to the motor vehicle or mobile home . . . until he or she has had issued to him or her a certificate of title to the motor vehicle or mobile home . . . .   Except as otherwise provided herein, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle or mobile home . . . sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter."[49]

But, Fla. Stat. § 319.22(l) provides no support for Debtor's position.  It does not apply to

boats; it applies only to the marketable title of motor vehicles and mobile homes.  Title

registration of vessels is governed by other statutory provisions, in Chapter 328 of the Florida

Statutes.[50]  There is no provision in Chapter 328 that is identical to Fla. Stat. § 319.22(1).

To the contrary, the provisions of Chapter 328 distinguish between the ownership of a

vessel and the owner's obligation to obtain a title certificate to lawfully operate the vessel in

Florida waters.[51]  Certain vessels, per statutory exemptions, do not even need to be registered.[52]

It seems unlikely that the Warlock, a specialized vessel used for open sea racing, is subject to the

registration requirement.

---

[48]  Doc. No. 123 at 21-22, 27.

[49]  Fla. Stat. § 319.22(1) (2015).

[50]  *See* Fla. Stat. §§ 328.01–328.80.

[51]  Fla. Stat. § 328.03(1)(a) – (d); § 327.02(28) § 328.03(1) and (2).

[52]  Subject to specified exceptions (vessels used exclusively on private lakes and ponds, vessels owned by the United States, federally documented vessels and non-motor-powered vessels of less than 16 feet), a vessel may not be operated on Florida waters unless the owner has received from the Florida DMV a certificate of title for the vessel.

Further, a certificate of title is not conclusive as to ownership of a vessel; it is only *prima facie* evidence of ownership.[53]   A person may be found to have beneficial ownership of a vessel, by having control and authority over its use, even though another person holds the certificate of title.[54]   Therefore, this Court concludes that there is no provision of Florida law which bars this Court from finding that Debtor is the beneficial owner of the Warlock and related assets. Debtor's motion for summary judgment will be denied.

6.   <u>Trustee's Motion for Summary Judgment.</u>

Debtor admits — by having failed to deny certain allegations in the Complaint,[55] by his failure to respond to the Trustee's requests for admissions,[56] and by his deposition testimony in AP 490 — and this Court so finds that:  Debtor had the Warlock built by the manufacturer; he purchased it in 2000; he made payments on the Warlock Loan; he purchased another tow trailer and outboard motor less than 60 days before the petition date; he  raced the Warlock shortly before and after the Petition Date; he has not sold or transferred the Warlock; he has possession of a tow trailer under the Warlock; and he repaired the 2011 outboard motor, post-petition.

---

[53]  Fla. Stat. § 328.03(4).

[54]  *See Stirrup v. Reiss*, 410 So.2d 537, 538-39 (Fla. 4th DCA 1982) (finding that, under Fla. Stat. 371.021(3) (1979), an "owner" of a boat is a person having the use and enjoyment of the boat, or title to the boat).  *See, In re Mayer*, 2011 WL 3299053 (9th Cir. BAP May 24, 2011) ("In Oregon, although the certificate of title is prima facie evidence of ownership, it is not unimpeachable or conclusive evidence of ownership . . . .  The undisputed facts in the record show that after paying the purchase price, [d]efendants took possession of the boat and had complete control over it.  They paid for the insurance and performed the necessary repairs.  Accordingly, we conclude as a matter of law, that [d]efendants, not [d]ebtors, were the owners of the boat under Oregon authorities.").  A debtor may hold an equitable ownership in a vessel despite the lack of a certificate of title, even where the certificate of title is held by another party.  *See also, In re Le*, No. 07-34244, 2007 WL 4197515, at *2 (Bankr. S.D. Tex. Nov. 21, 2007) (finding equitable ownership derived from the parties' conduct where one of them, not listed on the certificate of title, had made all payments on the notes on the vessels, paid all expenses and received all income from them).

[55]  Fla. Stat. § 328.03(4).

[56]  Doc. No. 109 at ¶¶ 34-38.  On September 2, 2015, the Trustee served discovery requests on Debtor, including requests for admissions.  *See* Notice of Service, Doc. No. 78.  The Debtor never responded.  Doc. No. 109 at ¶¶ 33-35.

In his AP 490 deposition, Debtor testified in response to questions by Mr. Lambers, the attorney for the United States Trustee:

> Q.    They were on the — did that arise — how did that debt arise, the First Union debt?
> A.    I had the boat built.

(Doc. No. 109-2, Chesley Dep. Vol. I 33:1 – 2)

\*        \*        \*

> A.    [First Union] could never achieve title on the boat.  It was their duty.  They were to pay the taxes.  They were to pay— they were— all that was in the note that I signed.  They were to pay taxes, achieve title, the whole nine yards.  So that like if— at least if I didn't get hit by the truck, I would have paid it off and gotten a title.  They never even achieved title.  So here I am paying for something that I'm not going to get-
> Q.    Okay. So—
> A.    — or I would have to go through other means to get.
> Q.    So they didn't have the ability to recover the boat at that point?
> A.    They had no ability to recover the boat. They couldn't.
> Q.    Are we talking about the Warlock boat?
> A.    Yes.

(Doc. No. 109-2, Chesley Dep. Vol. I 33:9-34:2).

\*        \*        \*

> Q.    So all they got against you was a judgment?
> A.    A judgment, a money judgment.
> Q.    Because you didn't fully pay on the note, you didn't—
> A.    I couldn't. I got hit by a damn truck. I tried for a year after the accident. There was no way. I was weeks from sitting in a wheelchair permanently. Weeks.
> Q.    Okay. So the boat remained yours?
> A.    Well, it remained in my possession, yes.
> Q.    Yes. Today is it your view that you own the boat?
> A.    It's my view that, you know, I can eventually maybe hire a title company and get a title created for it. I've been doing some research on Florida law. So possibly.
> Q.    Okay. How about the—
> A.    I mean, legally do I own it?  No.

(Doc. No. 109-2, Chesley Dep. Vol. I 34:13 – 35:5)

&ast;  &ast;  &ast;

Q.      Okay.  If you would go to Exhibit 185, and go to Page 199.    Is this a check made payable to Tim Nobles Trailers?

A.      That's what it says.

Q.       In the amount of $3,500?

A.      That's exactly what it says.

Q.      And what was it for?

A.      A boat trailer.

Q.      Is it a boat trailer that you bought?

A.      It's a— well, that's why I wrote him the check, yes.

Q.      For your personal purposes?

A.      Yeah.  That's that trailer that was taken.

Q.      That was what?

A.      Stolen.

Q.      Did you ever file a police report about that?

A.      Yep.  He did.  His property and, you know, I— I supplemented part of it, too.  The sheriff contacted me about it.

Q.      Well, whose trailer was it?

A.      My  trailer,  but  it was on  his  property.  He was a  business owner.

Q.      So you filed a police report on that?

A.      Yes.    There is a police report filed on the issue.

Q.      And did you make an insurance claim on it?

A.      I didn't have insurance on it.

(Doc. No. 109-2, Chesley Dep. Vol. II 208:2 – 209:4)

&ast;  &ast;  &ast;

Q.      But you have raced it once or twice since the filing of the bankruptcy case?

A.      Yeah.  We competed at the Worlds down in Key West, me and Tim.

Q.      When was that?

A.      After  the  filing  of  the  bankruptcy.   Yeah.   We raced— I think we did Cocoa Beach.  I don't remember— I know Cocoa Beach is where the motor exploded.  God.  Four miles ahead and the motor went to shit.  God.    That cost me a fortune.

(Doc. No. 109-2, Chesley Dep. Vol. III 336:8 – 17)

&ast;  &ast;  &ast;

> Q.    When you won that world championship, was it using the
> Warlock boat that's referenced—
> A.    Yeah.  Racing the boat.
> Q.    Same boat?
> A.    Yeah.

(Doc. No. 109-2, Chesley Dep. Vol. III 359:1 – 5)

Debtor has previously claimed that his father, Hammons, owns the Warlock, contrary to his own legal theory that only the holder of registered title can be the owner.[57]  But, Hammons testified, in the deposition taken in AP 490, that he has no papers evidencing ownership and has no lien on the Warlock, but at some time in the future, Debtor will transfer it to him.[58]  Debtor, himself, cross-examined Hammons on that point in the deposition:

> Q.    Okay.  So if I told you that if and when I can ever get the title for the
> Warlock, that basically it will belong to you, correct?
> A.    Correct.
> (Doc. No. 109-1, Hammons Dep. 88:6 – 88:9).

Debtor has had possession of the Warlock since he purchased it in 2000.  He has used it in sanctioned races before and after the Petition Date.  Hammons testified in his deposition that he regarded Debtor as the owner of the Warlock, based on Debtor's actual possession.[59]  At most, Hammons and Debtor have an understanding that Hammons will become the owner of the

---

[57]  *See* Doc. No. 109-3 at 17: 7 - 9 (transcript of the hearing held on May 14, 2015).

[58]  Hammons Dep. 8:3 – 8:9, 20:16 – 21:25.

[59]  Mr. Hammons answered as follows to the questions posed by the attorney for the UST:
   Q.   Are you aware of whether Mr. Chesley ever claimed to own the boat?
   A.   I just assumed.
   Q.   That he owned the boat?
        You have to say yes or no for the record.
   A.   Yes, I assumed.
   Q.   Why did you assume that he owned the boat?
   A.   Because he had physical possession of it.
Hammons Dep. 26: 14 - 21.

Warlock someday.  Of course, such an understanding can be premised only on the fact of Debtor's present equitable ownership.[60]  There can be no doubt that Debtor is the only person holding the essential attributes of ownership of the Warlock.

Debtor does not dispute that he has an outboard motor with the Warlock; but he claims that the outboard motor that he purchased pre-petition was damaged in a race post-petition and that he had to rebuild it.[61]  It is significant that none of Debtor's schedules disclosed the existence of the outboard motor that Debtor acquired in June 2011.  No evidence has been proffered to establish that the outboard motor now with the Warlock was purchased as a replacement during the Chapter 13 case.  The Court concludes that the outboard motor now with the Warlock is the same one purchased in June 2011, albeit with whatever repairs Debtor subsequently made to it. This outboard motor is property of the estate and must be turned over to the Trustee.

Debtor also does not dispute that there is a "trailer with the Warlock."[62]  He claims, first, that the tow trailer described in the Trustee's complaint (and in the Warlock Loan documents) was disposed of nearly 10 years ago.[63]  Second, Debtor claims that the tow trailer he purchased in June 2011 was later stolen and the one he now has belongs to one of the Nobles Defendants.[64]

Even if the tow trailer identified in the Trustee's complaint (per the 2000 Warlock Loan documents) was sold long before this case began (which the Court finds plausible), it is undisputed that Debtor paid $3,500 to "Tim Nobles Trailers" for a tow trailer less than 60 days

---

[60] Hammons Dep. 8:3 – 8:9, 20:16 – 21:25.

[61] Chesley Dep. 353:11 – 21, 354:10 – 21, 356:18 – 357:2.

[62] Doc. No. 123 at 7.

[63] Doc. No. 123 at 26.

[64] Chesley Dep. 208: 2 - 209: 4; Doc. No. 123 at 6-7.

before he filed the bankruptcy petition.[65]  In the Fourth Amended Schedule B, filed in the Main

Case on January 9, 2013 (Doc. No. 306), Debtor listed his ownership of a "TNT trailer" worth

$2,000.

The Court has considered Mr. Nobles' testimony from his deposition in AP 490:[66]

> A:      The trailer underneath the boat is my trailer.  The one that should
> be under it right now is my trailer I guess personally because that was part
> of the advertisement.  I put a trailer under the boat with my name on it and
> he had his big pretty boat and then we went to try to advertise on the boat.
> Q:      Okay.  Describe the trailer.
> A:      That trailer is a 31-foot, I believe, tri-axle trailer.
> Q:      That is your trailer?
> A:      That's my trailer, yeah.
> Q:      But it's not the one described in the Complaint, as far as you're
> concerned?
>         Ms. Nobles: Yeah, that's not his.
> A:      No, because the one in the Complaint is not even my VIN number.
> It's way too old.
> Q:      Perhaps you didn't bring it today.  Would you be able to provide
> proof of your ownership of that 31-foot trailer?
> A:      Oh, yeah.
> Q:      How would that be documented?
> A:      It has a manufacturer's certificate of origin.  I mean, it's my trailer.
> I built it with my hands.
> Q:      And is it in your possession now or is it still under the boat?
> A:      It's still under the boat as far as I know.

(Doc. No. 123-1, Nobles Dep. 34:2-35:3)

Debtor has not been forthcoming about the identifying details of the trailer he purchased

in 2011, or its theft.  Debtor did not disclose his possession of any tow trailer until some eighteen

months after the Petition Date.  He never disclosed its serial number or other identifying details.

He never disclosed the alleged theft of the trailer, as required by Item 8 in the Statements of

---

[65]  Doc. No. 109 at ¶¶ 33-35.  Plaintiff's Exhibit 185 to Debtor's deposition in AP 490 is a copy of check #1047,
written on Debtor's SunTrust account on June 2, 2011, only 7 weeks before the petition date.  The check is payable
to Tim Nobles Trailers.  AP 490, Doc. No. 143-87 at 202.

[66]  Doc. 123-1 at 11, Nobles Dep. 34:1-35:3.

Financial Affairs.[67]   He never disclosed, as required by Item 14 of the Statements of Financial

Affairs, that he was holding a tow trailer for someone else.   A copy of the police report for the

theft has not been proffered.

Instead of coming forward to correct his deficient disclosures, Debtor has used them

against the bankruptcy estate.   In this proceeding, for example, Debtor filed "Defendants

Demand For Discovery,"[68] requesting copies of documents that either do not exist, or would

otherwise be in his own possession.   In that pleading, he taunts the Trustee for her lack of

knowledge about the Warlock and Warlock-related assets, including a demand that the Trustee

provide him with information for the boat engine and boat parts, including documentation

showing what date Debtor acquired the motor.[69]   Regarding the Warlock and related assets,[70]

Debtor offers: "you can jibber jabber about anything else but the title in Mr. Chesley's name is

what is required by law in this matter."[71]   And, "[i]f your [sic] too broke to afford to send this

information please let Mr. Chesley know and he will get you the $2.00 needed to do so."[72]

The Court is faced with the anomaly of Debtor fighting to keep possession of a tow trailer

he says he does not own and as to which the Nobles Defendants have not come forward to

establish their ownership.   Debtor has not provided any evidence to substantiate his claim that

---

[67]   Question 8 on the Statement of Financial Affairs addresses losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of the case or since the commencement of the case. Debtor failed to indicate on any of his statements of financial affairs that he had property stolen from him.  Main Case, Doc. Nos. 14, 67, 131, 138, 307, 619.

[68]   Doc. No. 44.

[69]   *Id.* at ¶ 3.

[70]   *Id.* at ¶ 4.

[71]   *Id.* at ¶¶ 1 and 2.

[72]   *Id.* at ¶ 5.

the trailer he purchased in June 2011, and likely owned on the Petition Date, was later stolen. This self-serving claim is therefore rejected.

Although Mr. Nobles testified in his AP 490 deposition that the trailer in Debtor's possession belongs to him, the Nobles Defendants never answered the Complaint.[73] Nor, have they ever sought a ruling by the Court declaring their ownership of the tow trailer that is with the Warlock. Mr. Nobles' testimony appears to have the purpose of facilitating Debtor's legal position that Debtor's disavowal of ownership strips the Court of subject matter jurisdiction.[74]

In February 2016, the Trustee filed motions to amend the default judgments against the Nobles Defendants — to remove language relating to the trailer "presently under the Warlock."[75] The Court granted the motions, so that the judgments now relate only to the trailer described by the Trustee in the Complaint.[76]

For this reason, summary judgment cannot be entered for the Trustee declaring that the bankruptcy estate owns the trailer now in Debtor's possession. The Court will enter partial judgment, however, requiring that that trailer, which Debtor claims he does not own, be turned over to the Trustee until the issue of its ownership can be presented to the Court or otherwise resolved. If the Trustee finds that the serial number on the trailer turned over by the Debtor matches the serial number listed in the Complaint, the Trustee is authorized to sell the trailer.

---

[73] The Answer (Doc. No. 13) is signed by Tim Nobles, but only as the CEO of Tim Nobles Trailer Sales and Rentals, Inc. This Court has already directed the entity defendants to appear through counsel, which they never did.

[74] Under 28 U.S.C. 1334(e), the bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate, and over disputes regarding whether specific property is property of the estate. *In re Marathe*, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011). "It is generally recognized that '[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E),' and that, '[w]henever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.'" *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010) (internal citations omitted).

[75] Doc. Nos. 150-153.

[76] Doc. Nos. 155-162.

Likewise, if the Trustee finds that the serial number on the trailer turned over by the Debtor matches that of the trailer purchased by the Debtor pre-petition, the Trustee is authorized to sell the trailer.

The undisputed facts do establish that Debtor was the beneficial owner of the Warlock, related electronics, propeller and outboard motor on the Petition Date and to the present.  The Trustee's motion for summary judgment will be granted as to these assets on all counts.

7.     Related Matters.

After the parties' motions for summary judgment had been taken under advisement, Debtor filed a motion for "involuntary dismissal" of this proceeding.[77] In his motion, Debtor proclaims that the Trustee is implicitly challenging the constitutionality of Fla. Stat. § 319.22(1).[78]  He contends that any ruling by this Court that he owned the Warlock on the petition date is a "refutation" of Fla. Stat. § 319.22, which he characterizes as a constitutional challenge. Debtor argues that the Trustee has failed to comply with Fed. R. Civ. P. 5.1, which requires a party challenging the constitutionality of a state statute to serve notice and papers on the Florida Attorney General, and that this Court has failed to comply with the rule because it has not certified the constitutional challenge to the Florida Attorney General, as required by 28 U.S.C.

---

[77]  Doc. No. 97.  The motion is captioned:  *"Motion for Involuntary Dismissal and Notice to the Court, to the Court Record, and All Parties, of Defendants Notice to Florida State Attorney General Pam Bondi, of the Court and All Parties, Including Witnesses Evasive Actions of Concealment of a Constitutional Challenge and The Supreme Courts Doctrine Identifying the Challenge Under FRCP 5.1(a)(b), the Courts Evasive Concealment of Requirement FRCP 5.1(b), 28 U.S.C. § 2403(b), the Courts Failure to Recognize Lack of Jurisdiction Under FRCP 5.1(c) to Enter a Final Order Refuting, F.S. 319.22(1) or to Reject the Constitutional Challenge Without Notice to the State Attorney Generals Office, the Courts Intent to Enter a Final Judgment in an Adversary Proceeding Regarding F.S. 319.22(1) and the Constitutional Challenges by the Plaintiff's and Attorney's, the Plaintiff's and Plaintiff's Attorney's Failure to Follow FRCP 4(m), Failure to Follow FRCP 19(a)(1)(A), FRCP (a)(1)(B)(i)."*

[78]  According to Debtor:  "The only way to attempt to make a claim when every **court in the State of Florida** is **barred** by **F.S. 319.22(1),** would be to **challenge** the **constitutionality** of the **statute** or the validness, which is the constitutionality challenge, if in the end result the plaintiff is claiming to refute F.S. 319.22(1) completely."  Doc. No. 97 at ¶ 18 (emphasis in original).

§ 2403.  Therefore, Debtor maintains, this proceeding must be dismissed.[79]

But, the Trustee has not asked the Court to overturn Fla. Stat. § 319.22(1), or any other provision of state law.  This adversary proceeding concerns only the issue of whether Debtor was the beneficial owner of the Warlock and related assets on the Petition Date and had them in his possession on the date of conversion of the case to Chapter 7.  As discussed above, Fla. Stat. § 319.22(1) does not apply to vessels and therefore has no bearing on the issues in this proceeding.  Debtor's claim of a constitutional challenge is unfounded.  The Court will deny this motion.

Second, on February 11, 2016, and again on March 14, 2016, Debtor filed a motion seeking reconsideration of the judgments previously entered against the Nobles Defendants.[80] After filtering out Debtor's needless invective, this motion makes three claims:

1.    The Nobles Defendants are not debtors in bankruptcy and are not subject to this Court's jurisdiction (Doc. No. 149 at ¶¶ 1-8).

2.    The tow master trailer identified in the Trustee's complaint was (a) never owned by Debtor, but by a corporation and (b) it was sold in 2005 (Doc. No. 146 at ¶¶ 27, 57; 15, 57);[81] thus, because the Trustee cannot prove the trailer now in his possession is owned by him, this Court has no jurisdiction to  adjudicate the Trustee's claim to recover the tow trailer in his possession  (Doc. No. 149 at ¶ 27).

3.    Since there is no tow trailer registered in Debtor's name, Debtor cannot be the owner of whatever tow trailer is now under the Warlock, according to Debtor's interpretation of Fla. Stat. § 319.22 (Doc. No. 149 at ¶¶ 22, 39-40).

---

[79]  Doc. No. 97 at 17.

[80]  Doc. No. 146 (amended at Doc. No. 149); Renewed Motion for Reconsideration at Doc. No. 171.  Amended final default judgments against these entities are entered as Doc. Nos. 156, 157, 158, and 160.

[81]  Interestingly, in paragraph 15 of the Debtor's Amended Motion for Reconsideration (Doc. No. 149), he states: "14 years ago the debtor purchased that trailer [serial number 5AZBB3034YF007215], which was sold more than 10.5 years ago to date."  However, in paragraph 27, in reference to the Tow Master Trailer, Debtor states: "The ownership of a Tow Master Trailer was a complete figment of the Chapter 7 Trustees [sic] and attorney Donica's imagination. 'Addictive Watersports Inc.' owned that trailer because it was tax deductible for the corporation."

Debtor also puts forth the charge that the Trustee and the United States Trustee's office, who know that the tow trailer identified in the Complaint no longer exists, have:

> ". . . enticed [sic] a fraudulent scheme to attempt grand theft in bringing forward a claim for another trailer owned by Tim Nobles and his entities, attempting to create a frivolous jurisdiction by this court and by themselves as officers of this bankruptcy court."

> "The Chapter 7 Trustee and attorney Donica have failed to date to show ownership on behalf of the debtor of the TNT manufactured trailer that they are attempting to steal."[82]

The subject matter of this proceeding is the ownership of assets that are alleged to have been in Debtor's possession from the Petition Date and through the date the case was converted. The Debtor's present disavowal of ownership does not divest this Court of subject matter jurisdiction.[83]

As discussed above, Fla. Stat. §319.22(1) does not bar this Court from adjudicating ownership of the tow trailer under the Warlock, when it is a fact that Debtor purchased a tow trailer shortly before the Petition Date. This Court's jurisdiction extends to all of a debtor's property, wherever located, and disputes concerning that property.[84] It is without doubt that any person, even non-debtors, can be compelled, upon personal service, to assert and defend any interest in property that may be adverse to the bankruptcy estate.[85] Even if the Trustee mis-identified the tow trailer in the Complaint by relying on the 2000 Warlock Loan document, in the

---

[82] Doc. No. 149 at ¶¶ 33 and 39.

[83] *See* Note 74, *supra.*

[84] 28 U.S.C. § 1334(e); *In re Xonics*, 813 F. 2d at 131-32; *In re Marathe*, 459 B.R. at 854.

[85] *See, e.g., In re Marathe*, 459 B.R. at 854-55.

face of Debtor's failures to disclose his June 2011 purchase of another one, the bankruptcy estate would still be entitled to recover the one Debtor had on the Petition Date.

Debtor, a non-lawyer, is not qualified to seek any relief on behalf of the Nobles Defendants. The Nobles Defendants that are corporate entities never appeared through counsel to seek the relief that Debtor now seeks for them. Debtor's motion fails to present any new evidence or any manifest error of fact or law to warrant the relief requested. For all of the foregoing reasons, the motion to reconsider will be denied. For all of the same reasons, Debtor's Renewed Motion for Reconsideration,[86] filed after the Court entered the amended orders and final default judgments against the Nobles Defendants, will also be denied.

Third, in response to the Debtor's Motion for Summary Judgment, titled "Debtors [sic] Consolidated Motion for Summary Judgment for Timothy R. Nobles, Tim Nobles Trailers [sic] Sales and Rentals, Inc., Tim Nobles Trailers Inc., Tim Nobles Trailers and Repair LLC, Motion for Reconsideration and Moves for Judicial Estoppel,"[87] which was later amended on October 30, 2015,[88] the Trustee filed a Motion to Strike Debtor's amended motion for summary judgment to the extent the motion seeks relief on behalf of the Nobles Defendants and Hammons.[89] In response, the Debtor alleges that he is not attempting to represent the Nobles Defendants, nor is he asking the Court to reconsider the judgment entered against Hammons.[90]

Because the Nobles Entities have failed to appear in this adversary proceeding, and because summary judgment has already been entered against Hammons, the Court will grant the

---

[86] Doc. No. 171.

[87] Doc. No. 121.

[88] Doc. No. 123.

[89] Doc. No. 124.

[90] Doc. No. 125.

Trustee's Motion to Strike, in part.  Accordingly, all portions of the Debtor's amended motion for summary judgment that purport to seek relief for the Nobles Defendants or Hammons are hereby stricken.

## CONCLUSION

The Court concludes that the Warlock, together with its propeller and electronics, are property of the bankruptcy estate and must be turned over to the Trustee.  The Court rejects Debtor's argument that he is not the owner of the Warlock, because of Fla. Stat. § 319.22(1). That statute has no bearing on this proceeding.  The undisputed and admitted facts support the conclusion that Debtor has been the beneficial owner of the Warlock since 2000.  The outboard motor is a pre-petition asset, even if Debtor repaired it post-petition.  Therefore, the Trustee's motion for summary judgment will be granted on all counts as to these assets.

Debtor purchased a tow trailer pre-petition, which he did not timely or fully disclose. Debtor's claim that it was stolen was never disclosed either.  Because the Complaint asserts the estate's claim only to a tow trailer that was purchased in 2000, not the one now with the Warlock, summary judgment cannot be entered for the Trustee declaring that the bankruptcy estate owns the trailer in Debtor's possession.  The Court will enter partial judgment, however, requiring that the trailer, which Debtor claims he does not own, be turned over to the Trustee who will then have 45 days after taking possession of the trailer to determine whether to amend the Complaint or file another appropriate pleading and re-serve the Nobles Defendants, arrange a settlement with them, or release that trailer to one of them.

Clerk's Office to Serve.